The court will proceed to the next case, Di Joseph v. Standard Insurance. Mr. Kiss.  My client is Theresa Di Joseph. She is the plaintiff and the appellant in this action. And as a brief background to my client, she worked for UnitedHealthcare. But she worked for more than UnitedHealthcare. UnitedHealthcare brought out, bought out a series of companies. She started working at Allstate. Allstate was bought out by someone else, and then they were bought out by someone else, who ultimately was bought out by UnitedHealthcare. Essentially, my client stayed at the same desk for a variety of companies for 32 years. She was a longstanding employee, whether UnitedHealthcare or its predecessor. During that time, my client had an exemplary work record, was promoted, and was a dedicated employee. In 2013, she had an operation on her foot, and as a result of that operation, she developed a disease called Complex Regional Pain Syndrome. And to give you an idea of what that is, it's something very similar, but not identical, to what fibromyalgia would be. As a result of that disease, she obviously sought medical attention, and she, within a matter of a year, she had actually had over 200 doctor's appointments. This continued throughout her period of working at UnitedHealthcare. The doctor's appointments were obviously affecting her ability to do work, and she applied for and was granted temporary disability. While on temporary disability, she continued to see doctors, and in this day and age, when you see a doctor very often, it comes with a cursory examination. And here, let me write you a script. You know, take a couple of these and call me in a month, let me know how you are. As her disease developed, she was seeing more and more doctors, more and more scripts. A lot of these were opioids. Back before prescribing an opioid was forbidden, she treated herself, not herself, but she treated based on what her doctors told her to do. It got to the point where she was being helped by family members. Just to get through the day, she would have both her mother, her sister, her own daughter help her. She filed a claim with UnitedHealthcare, and they said, well, we'll put you on permanent disability. We don't think you're ever going to be able to come back to work. When she was put on permanent disability for a time period, then she received a letter saying that your permanent disability is terminated and you're no longer employed. During this time, they said, well, you know what we're going to do? You can appeal this process. And they in fact even suggested that she go to a standard benefits company that they even paid for, and they helped her appeal the process. And at the end of the appeals process, she received a letter and said, you're denied. You have no more benefits. And she received that approximately April 1st, I believe, of 2000, or excuse me, April 3rd of 2015. And that becomes a critical date because her understanding is that she has a certain time period to file a court case. No one tells her this. It's kind of hidden in a benefits package letter that she has to exhaust her administrative appeals, which were exhausted on that April date. And then she has to file a lawsuit. Her thinking is, well, I have three years from April 3rd, 2015, but nobody ever tells her. The people that are handling her administrative appeals that are provided by UnitedHealthcare, nobody tells her, no, wait a second. The date that you have to file is the date that the incident first occurred. She's not a lawyer. She doesn't have any particular qualifications to make that determination. And so she relies on that. She applies for Social Security and ultimately is granted Social Security disability. But in the meantime, she doesn't have any employment and any income. She brings this, she files this suit, and the suit is filed in front of Judge Pallmeyer, who makes a ruling on this case. There's never been any testimony. There's never been any depositions. It's all been done by motion, and Judge Pallmeyer denies her claim. And she cites a couple of reasons for denying her claim. The first reason is that all of her claim is preempted by ERISA. And irrespective of what she may have thought or what her case would have been, it's now an ERISA case. And by the way, there was a case filed in the Circuit Court of Cook County alleging 10 different actions. And certainly one of those actions, breach of contract, I think, had it not been preempted by ERISA, would certainly have been filed within the time limits. But because of the ERISA preemption, she said, well, no, no, it's not filed. She had a little bit over a year from the April 3rd, 2015 date to get into court. And she failed to get into federal court, which is where this would have been required by that time. And therefore, ERISA preemption prevents her. Now, her response to that is, well, we have equitable tolling. And the equitable tolling is, I was disabled. I was on medications. I was being helped. I was being taken care of by my family. I didn't understand what was going on or what time periods I had. And even if I had, I wouldn't have understood it to be three years from the date of the injury. It would have been three years from the date of my termination, which was April 3rd, 2015. Now, in addition to that, Judge Pallmeyer's ruling also says that she raises a RICO claim in her original complaint. And the RICO claim is that I worked for this company for 32 years. For 32 years, they said I had a disability policy. I paid for that policy. Judge Pallmeyer says, no, you didn't. You don't have a check. There's no check going from you to UnitedHealthcare. And her argument is, I don't need a check. I worked there for 32 years. This was a benefit that they promised me. It came out of my paycheck. It may not have come out as a dollar amount or a specific amount, but that was part of the deal. You know, when I said, you know, you get two weeks of vacation, my vacation doesn't come out of every single paycheck. I get two weeks of vacation. And if they don't give it to me, the Department of Labor comes in and says, you can't take vacation away from somebody. They earned it. She earned it. 32 years, she earned it. I don't want to go over my time. Thank you, Mr. Kiss. Ms. Herring? May it please the court, Jacqueline Herring on behalf of Standard Insurance Company and UnitedHealth Group. The district court in this case correctly dismissed a plaintiff's lawsuit when after multiple opportunities to amend, plaintiff failed to state any legally viable alternative. She was unable to do so despite the court allowing her opportunities to amend. Her ERISA claims are time barred. Her state law claims are preempted by ERISA, and she failed to allege any element of any meaningful RICO claim. The district court was correct to dismiss the lawsuit, and that judgment should be upheld. This group policy, like most group policies, includes the same three-year contractual time limit that has consistently been found to be both reasonable and appropriate to apply in ERISA matters. And for the first time now today, we heard plaintiff even was well aware that there was a three-year time limit, and apparently even though she was aware, she somehow miscalculated. That was not an argument that has ever been raised at any time before, but the three-year contractual time limit, the Supreme Court tells us, that parties can also contract for when that claim accrues. And this particular provision, as do most of these provisions, accrues based on when proof of loss is either provided or required. And in this case, that triggering date was July 12th of 2013. The contractual limitation period expired July 12th of 2016, and plaintiff failed to file her lawsuit until almost a year later in May of 2017. That lawsuit is plainly time barred under the policy. Plaintiff argued below, I shouldn't say argued, plaintiff made a conclusory allegation below that equitable tolling should apply due to mental disability, but she failed to allege any facts that would establish equitable tolling based on mental illness under the law. Equitable tolling requires that she in fact be prevented from filing suit within the statute of limitations. And as counsel just pointed out, she did a number of things on her own. She apparently applied for Social Security. The record tells us that she prosecuted a lawsuit along with her attorney. She signed a verified complaint. She submitted her own administrative appeal. She was taking a number of actions to pursue her legal rights. And under the law of equitable tolling, mental illness is only a basis for tolling if it in fact prevents the individual from managing their affairs and thus from understanding their legal rights and acting on them. And Ms. DeJoseph clearly does not meet that standard in this case based on the record evidence. But additionally, she failed to allege any facts that would in fact establish that she met that standard. And the district court was correct in dismissing for her failure to satisfy the contractual time limit. The state law claims in this case are preempted by ERISA. Ms. DeJoseph has said numerous times that she does not implicate, that her claims do not implicate any duty outside of ERISA. And ERISA broadly preempts all claims that are seeking benefits or damages for denial of benefits, and that's what her claims do in this case. And therefore, those state law claims are preempted by ERISA. Her RICO claim failed to allege any element of any viable claim for RICO. And the district court correctly made that decision and dismissed her complaint. Her ERISA claims are time barred. Her state law claims are preempted by ERISA. And she has no legally tenable RICO claim. What do you think the biggest problems with the RICO claim are? It's hard to even say what the biggest one is, Your Honor. None of the elements were alleged. There was no pattern of activity that was alleged. There were no predicate acts alleged with any degree of specificity. There were no damages alleged. Not a single, there was no independent enterprise or an organization. What we have is two contracting parties here. There is no criminal enterprise. None was alleged. No scheme was alleged. No predicate acts were alleged. There was just no allegation of anything that would support a civil RICO criminal enterprise allegation in this routine ERISA benefits claim with a contract between an employer and an insurance company. The district court correctly dismissed this complaint and correctly exercised her discretion to dismiss the complaint with prejudice when after plaintiff was granted multiple attempts to amend, she continued to fail, she continued to be unable to state any viable claim. Thank you, Ms. Herring. Mr. Kiss. The plaintiff filed her original complaint and was amended at one time. After that, it was dismissed with prejudice. So there weren't multiple attempts to allege a complaint. There were two, the original and one amended. And with respect to the RICO claims, what we have is Judge Pallmeyer's decision and her decision basically says that she cannot be a victim of a scheme to defraud customers or premium payments that she never paid or was never required to pay. Again, we take issue with that. She was required to pay it and she did pay it. She may not have, again, may not have paid it with a check, but it was paid. And with respect to a pattern of this going on, we never had an opportunity to explore that. In order to do that, you've got to do discovery. You've got to be able to find out how many other people are put in this position. How many lay people are told, oh, yeah, we're appealing your decision and provided companies to do their paperwork by UnitedHealthcare and nobody at the end of the line says, oh, by the way, while we were appealing this decision, the clock was running. The clock was running. And nobody says, nobody sends a letter to say, wait a second, you've got one year and three days to file something. And these are fiduciaries. They have a fiduciary obligation not to the mothership, UnitedHealthcare. They have a fiduciary obligation to Teresa DeJoseph. She's the smallest person in this whole organization, the one person. And if we would be given an opportunity to explore what's in RICO in terms of what UnitedHealthcare does just with this issue, I guarantee you this doesn't happen to her. It happens to a lot of people. And nobody has the ability. These are people that are making money. They can't afford RICO lawyers. This is one. This is her opportunity to raise the issue, and she raised it. And again, for those reasons, I don't think her claim should be time-barred. I think her claim should be equitably told because of her mental condition. Granted, she wasn't put in an asylum and she wasn't locked up, but neither are those people, those poor people out there now who are taking opioids for the last five years and can't get out of bed in the morning. And the same thing with respect to, well, you didn't prove your RICO claim because, you know, there's no pattern, how many other thoughts. We don't have the ability to do that without discovery. And so for that reason, I would ask that this court send this case back to allow us to do the proper discovery, and I would be stunned if we weren't able to prove that there were a lot of people affected by this statute. Thank you, Mr. Pierce. Ms. Harry, the case is taken under advisement.